421 So.2d 1053 (1982)
TIMES SQUARE REALTY, INC.
v.
CITY OF GRENADA, Mississippi.
No. 53523.
Supreme Court of Mississippi.
November 10, 1982.
Holcomb, Dunbar, Connell, Merkel, Tollison & Khayat, Grady F. Tollison, Jr., Mary Ann Connell, Oxford, for appellant.
Keeton, Cofer & Embry, Phil Embry, Lundy & Lundy, Grenada, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
This eminent domain case comes from the Special Court of Eminent Domain of Grenada County. The City of Grenada had expanded its city limits and sought to condemn two water and sewer systems, both of which were brought into the area. These *1054 adjacent systems were Hickory Hills Subdivision and John Smith Subdivision, both of which were owned by John Smith. After hearing evidence, the jury returned a verdict for the purchase value of all systems in the amount of $84,217. The condemnees appealed alleging three assignments of error; namely:
I. THE COURT ERRED IN PERMITTING THE TESTIMONY OF APPELLEE'S EXPERT, EUGENE OWEN, AS TO THE FAIR MARKET VALUE OF THE WATER AND SEWER SYSTEMS BEING CONDEMNED SINCE THIS TESTIMONY WAS ARRIVED AT BY AVERAGING TWO APPROACHES TO APPRAISAL AND WAS NOT AN INDEPENDENTLY DETERMINED SUM.
II. THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE SINCE THE SUM AWARDED WAS FAR LESS THAN THE EFFECTIVE REPLACEMENT VALUE OF THE EQUIPMENT IN THE GROUND AS ESTABLISHED BY APPELLEE'S OWN EXPERT.
III. THE COURT ERRED IN FAILING TO PERMIT THE TESTIMONY OF WINFRED McADAMS AS TO A COMPARABLE SALE OF A PRIVATE UTILITY AND THE SUMS THE FARMERS HOME ADMINISTRATION WOULD LEND FOR DEVELOPMENT OF A WATER-SEWER SYSTEM.
Assignments Nos. 1 and 2 may be discussed jointly. The only expert introduced by the city was Eugene Owen, an admitted expert from Baton Rouge, Louisiana. He had designed and built a number of water and sewer systems.
Mr. Owen testified there were different methods that could be used to ascertain the present true value of a water and sewer system involved in eminent domain proceedings. He admittedly used two of these methods. He first approached the problem from the method known as depreciated replacement costs plus going concern value. In describing this method and giving his opinion as to the value in the case in question, he first became familiar with all facilities involved. He then attempted to determine their replacement costs, if the facilities were new. He then made a determination as to the depreciation of the existing systems and placed a value on that item. In determining this value he used forty years as the useful life of the systems. Parts of the systems involved were constructed in 1969 and other parts in 1975. He further testified that he took into consideration the obsolescence of parts of the systems, particularly, the water wells and a large meter that served the entire system, finding that none of these had any value to the City of Grenada. He did not therefore include them in his replacement value appraisal method.
Without further detailing the procedure used by appellee's expert witness Owen, in describing the depreciation value method, he arrived at a total depreciation value of $137,108. Owen then deducted what he called a negative going concern value of $27,358, leaving a total value under the cost less depreciation appraisal method of $109,750. He explained the deduction by taking a nine percent debt onto the effective replacement cost of the operation of the system. His explanation for this deduction is rather hazy, but appears primarily to be based on the net income of the existing systems and deducting interest from the replacement costs during the whole depreciation period.
Owen then changed to an entirely different appraisal method, the return on investment method. He arrived at this entirely different method and value by using the last year's income of $6,775, to the system's owner, and determined that for the owner to realize this income during the remaining system's existence, the city would have to pay the owner only the sum of $58,683. Owen then averaged the amount of $109,750 arrived at in the replacement value appraisal method and $58,683 arrived at by the return on investment method and stated that in his opinion this was the fair market value. The ultimate figure was $84,217.
*1055 This averaging of two separate and entirely different approaches to value in eminent domain cases is of first impression in this state. We hold that allowing this to be done is reversible error. The reasons therefor should be obvious. In the first place, each method has its own separate and distinct requirements. Each is supposed to be a fair and equitable amount owed to the condemnee. The final figure arrived at by the appraisal witness should not have any vagueness about it. The only explanation by Owen was that he thought it better to arrive at a figure in that manner.
There is authority upholding appellant's position. In 5 Am.Jur., Arbitration and Award, § 135, p. 618, it is said that: "A quotient verdict is no more lawful for arbitration than a quotient verdict for jurors." In the treatise "The Appraisal of Real Estate," American Institute of Real Estate Appraisers, (6th ed. 1973), p. 472, we find the following:
Having analyzed the data and obtained indications of the value by the appropriate approach or approaches, the appraiser proceeds to reconcile the value indications into a final conclusion of the defined value.
In its precision, an appraisal depends on his judgment, and applicability of the information on which it is based. It also depends on the knowledge and experience of the appraiser in interpreting the data. All of the pertinent data is analyzed in forming the basis for his opinions.
The appraiser uses his judgment particularly in deciding the degree of reliance to be placed on the indications of value that are derived from one or more of the appropriate approaches. The indications of value from the different approaches are never averaged; to do so would be substituting arithmetic for judgment and experience. Accordingly, when using more than one approach, the appraiser must reconcile the value indications, thereby arriving at a conclusion, which in his opinion, is the defined value of the property under appraisal.
We agree that expert Owen's system of averaging the two separate and distinct appraisal methods is analogous to a jury arriving at a quotient verdict. There was no reasonable explanation by Owen as to why he averaged the separate methods, except he thought it was the thing to do. We do not think so, and as stated above, are of the opinion that allowing this is reversible error.
We previously have mentioned that appellant's witnesses gave no value to the admittedly existing available water wells and main meter on the entire systems, solely because in his opinion they were "worth nothing" to the city, although being taken. We think that the principle question is what is the worth of that being taken to the person having to sell his property. There was evidence that at least a value existed for the city in regard to the water wells as to their location and extent to which water was available, even if only in the contingency of an emergency. Admittedly, the city was taking the meter and it had some value. In our opinion both of these items should have been included in the appraised value of the entire systems.
Appellant offered testimony of Winfred McAdams, who was the Assistant Director of the Farmer's Home Administration (FHA) with headquarters in Grenada. The city had recently purchased another water and sewer facility known as Airport Circle Water System. This system when built was financed by the FHA. Appellants attempted to present evidence from McAdams as to the financing, construction and purchasing of this system under the third acceptable method of appraisal of water and sewer systems, that is, comparable sales in the vicinity.
The FHA approved and made a loan to the owner and builder of the Airport Circle Subdivision. McAdams testified he was familiar with this subdivision and he was the one who handled the financing. He attempted to testify as to the details of the method of financing in order to show what the FHA considered to be the original cost factor. There was an objection to this *1056 testimony and the objection was sustained. A proffer was made by appellants that the complete cost of the loan was in the amount of $174,300. Appellants offered to show the amount paid by the City of Grenada, which of course, would be indicative of the amount of depreciation since construction and would be evidence as to what the city considered a proper price under the cost and length of depreciation. The record does not show any appreciable difference between this subdivision and the two in question. Any difference could be explained by testimony from witnesses. We think it was an abuse of discretion for the trial court to exclude the testimony of this witness.
REVERSED AND REMANDED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.